JAMES A. FLACK, Respondent, *v.* RODAY S. BRASSEL et al., Appellants.

SHERIFF AND DEPUTY — ENFORCEMENT OF DEPUTY'S BOND TO INDEM-
NIFY SHERIFF. A sheriff may recover, by action upon his deputy's official bond conditioned to indemnify him against liability to third parties from acts or omissions of the deputy, the amount for which he has been rendered liable to the plaintiff in an attachment suit by reason of the deputy's falsely informing him that a check received by the deputy from the claimant of attached property, on releasing the property under a written stipulation between the attachment plaintiff's attorney and the claimant that the proceeds of the check were to be held by the sheriff until the final judgment as security for the plaintiff's demand in the attachment suit, was received simply in lieu of the property released.

*Flack* v. *Brassel,* 1 App. Div. 588, affirmed.

(Argued June 24, 1897; decided October 5, 1897.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 4, 1896, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Amasa J. Parker, Jr.,* for appellants. The appeal in this action properly lies to this court. (Code Civ. Pro. §§ 190, 191, 1337; *People ex rel.* v. *Barker,* 152 N. Y. 417.) Brassel and his sureties are not liable, as there was no such improper act or omission of duty on his part as is covered by

the bond. (*Franklin* v. *Hunt*, 2 Hill, 671; Croker on Sheriffs, § 369; *Rowe* v. *Richardson*, 5 Barb. 385.) The fault of the deputy having been remédied, a subsequent wrongful act of the sheriff should not permit him to fall back on the original fault of the deputy for the purpose of rendering the deputy and his sureties liable. (Code Civ. Pro. §§ 658, 820; *Walter* v. *Middleton*, 68 N. Y. 605.) No provision of the bond allowed the rendering of a judgment against the sheriff to be the ground or basis of an action against the deputy and his sureties except the judgment was obtained for some neglect of the deputy in his official ·capacity. (*Conner* v. *Keese*, 105 N. Y. 643; *N. M. B. Assn.* v. *Conkling*, 90 N. Y. 116.)

*Abram Kling* for respondent. The unanimous decision of the Appellate Division is conclusive upon the questions of fact, and will not be reviewed in this court. (*Szuchy* v. *H. C. & I. Co.*, 150 N. Y. 219; *Amherst College* v. *Ritch*, 151 N. Y. 320; *People ex rel.* v. *Barker*, 152 N. Y. 418.) The ·defendant Brassel had no authority to make a stipulation to ·secure the claim of Blair and Hallet upon the recovery of a final judgment without the knowledge and consent of the plaintiff in this action, and upon the payment made by plaintiff pursuant to said stipulation the defendants became liable upon their bond. (Code Civ. Pro. §§ 644, 658; *Conner* v. *Keese*, 105 N. Y. 643; *Tuttle* v. *Cook*, 15 Wend. 274.) The judgment in the action of Blair against Flack was conclusive evidence of the defendants' liability under the terms of the bond. (*Conner* v. *Keese*, 105 N. Y. 643.)

O'BRIEN, J. The plaintiff in this action seeks to reimburse himself for a loss sustained when sheriff of New York by an ·action upon the bond of the defendant Brassel, who was one ·of his deputies. The loss to the sheriff, it is claimed, originated in the misconduct or misfeasance of the deputy. The wrongful or improper act of the deputy which is the basis of the complaint was done in the regular course of his duties

in the name of his principal, the sheriff, and was clearly
within the general powers delegated.   It is somewhat difficult
to extract from the multitude of collateral facts in the record
the crucial question in the case, and it cannot be understood
without a clear view of the main facts which are at the
foundation of the plaintiff's claim.

On the 2d day of January, 1889, the deputy and three
sureties executed to the sheriff a bond for the faithful per-
formance by the deputy of his official duties as such.   The
action is upon this bond for a breach of the conditions.   Two
of the sureties having died in the meantime, their personal
representatives were made defendants with the principal and
the other surety.   The conditions of the bond were that the
deputy would in all things well and truly execute all the duties
of the office and save the sheriff harmless from all acts con-
cerning the execution and return of all legal process placed in
his hands as such deputy, with numerous other conditions in
the broadest language.   Without enumerating them all, it is
quite sufficient to say that the conditions are broad enough to
cover any liability or loss of the sheriff disclosed by the evi-
dence in the case.

The breach of the bond charged in the complaint is in sub-
stance that the deputy made a false return of an execution in
the name of the sheriff when he should have satisfied it ; that
the sheriff was sued for the false return of his deputy and final
judgment passed against him, which he was compelled to pay.
The judgment upon which the execution was issued was
entered on or about the 13th of April, 1889, for $1,276.44, in
an action by Blair & Hallett against the Illustrated News Com-
pany.   The action was commenced by attachment on or about
the 22d day of January, 1889.   The attachment was delivered
to the defendant as deputy sheriff, and he levied upon goods
of the defendant in the action sufficient to satisfy the claim of
the plaintiff therein.   On or about the 8th day of March, 1889,
one Horace J. Adams made claim upon the deputy for the
goods thus seized, on the ground that he was the owner.   The
deputy thereupon procured the plaintiff's attorney in the

attachment to enter into a stipulation in writing with Adams, to the effect that the latter would substitute a certain check, large enough to cover the amount of the attaching creditors' claim for the goods, that the sheriff might collect the check and hold the proceeds as security for the payment of any judgment that might be recovered in the action. This stipulation being executed, Adams gave to the defendant the check for $1,400, and the goods were released from the attachment. He also paid to the defendant $100 for his services in making the arrangement. This check, as we will presently see, became the prolific source of litigation between the parties, and the subsequent loss of the sheriff was due largely, if not entirely, to the transaction. It seems that it became a matter of dispute whether it was given merely to take the place of the goods, charged with the same lien that they were charged with, or whether it was given and accepted as absolute and unconditional security for the payment of any judgment that the attaching creditors might recover, and that, as we have seen, was less than $1,300. This question, notwithstanding the written stipulation, seems in some way always to have been made one of fact, and there were at least two contradictory decisions on the subject, both adverse to the claim of the sheriff.

The deputy, however, collected the check, and on the 14th of March, 1889, sent his own check to the sheriff for the amount, that is, for $1,400. The sheriff had now in his possession $1,400, furnished by Adams, and had released the goods attached. It appears, however, that Adams instituted proceedings before a sheriff's jury, touching the ownership of the property attached, and the check given by him, and there was a finding in his favor.

He then demanded the check from the sheriff or its proceeds, and, upon refusal to deliver the same to him, he brought an action against the sheriff and recovered. This recovery must, of course, have been upon the theory that the check was deposited to take the place of the goods and not as absolute security for the judgment. The judgment against the sheriff in favor of Adams for the check was entered on

1897.]  Flack v. Brassel.  625.

N. Y. Rep.]  Opinion of the Court, per O'Brien, J.

the verdict· of a jury April 11, 1890, and was subsequently paid by the sheriff.

Long before this, and on April 18, 1889, Blair & Hallett, having obtained their judgment, issued execution to the deputy, which he returned wholly unsatisfied in the name of the sheriff. This return, it is said, was false, and possibly it was, if it be true that the check of Adams was given and accepted as absolute security for the judgment, since, in that case, the sheriff had the money in his hands with which to satisfy the execution. The plaintiffs in the execution claimed that the check was given as absolute security for their claim,. and on the 11th of June, 1890, they sued the sheriff for a. false return, or upon that theory, and recovered on a trial. before a jury. The judgment was subsequently affirmed in. this court (141 N. Y. 53), with an expression of opinion that. while the verdict appeared to be unjust, yet the litigation had passed the court where errors of fact are to be corrected.

So that the sheriff was defeated by Adams on the theory that the check simply took the place of the goods and was. not given as absolute security for the judgment, and was defeated by Blair & Hallett upon the contrary theory that it. was deposited and accepted as security for the judgment and not as a substitute for the lien on the goods.

This result at first view would seem to furnish a curious. commentary on the uncertainty that attends litigations in the courts of justice, but as the records of the two cases are not now before us in full, it would be useless to conjecture how such conflicting results were attained. What renders it more remarkable is the circumstance that the stipulation under which the check was given is in writing, and the language used does not seem to be at all ambiguous. There was doubt-less some reason which we are unable to glean from the record now before us why the courts below, with full power over the facts, omitted to set aside either of the verdicts.

The real scope and meaning of the stipulation, which the deputy procured from the attorney for the attaching creditors

and upon which the goods were released from the levy, became
again the principal questions litigated in this action, and we
now have in this decision of the referee who tried the cause a
distinct finding on the subject, which is the third time that the
nature of the stipulation has been passed upon by courts of
original jurisdiction, to say nothing about the appeals which
have been made to other courts in the progress of the litiga-
tion.    Those findings now become very important since they
must very largely, if not wholly, control our view of the case
as it now appears.

The learned referee has found as matters of fact: (1) That
the proceeds of the check were by the stipulation under which
it was given to the deputy and under which the goods were
released, to be held by the sheriff until the final judgment as
security for the plaintiff's claim in the attachment action.
(2) That Adams, in order to induce the deputy to release the
goods from the levy, paid him $100.    (3) That the defendant,
having as deputy made such stipulation, suppressed these facts
from the plaintiff, but stated to him and his attorney and
under sheriff the contrary fact, that the check and the pro-
ceeds were received simply in lieu of the property released,
which was untrue, and that by reason of the neglect and omis-
sion of the deputy to inform the sheriff with respect to the
actual terms and purpose of the stipulation he was guilty of
misfeasance and malfeasance in the performance of his duties
as such deputy, for which the plaintiff was made liable to the
parties who had procured the attachment.    (4) It fairly
appears from the case, though not expressly found, that the
plaintiff, the sheriff, had no knowledge of the stipulation till
the trial of the action brought against him by the attaching
creditors for a false return.

There is no finding that the return was false, and in view of
the fact that the money was all the time in the hands of the
plaintiff, and that there was no other property of the debtor
in the attachment action that could be levied upon by the
deputy, it might be difficult to sustain this judgment if the
action was to be considered as based solely upon an allegation

of the false return of an execution by the defendant in the plaintiff's name and as his deputy.

But the action is really based upon the misconduct, acts and omissions found by the referee and above indicated. It is clear that the deputy entered into an arrangement with Adams to release the property from the attachment which was the primary source of all the subsequent entanglements. It is found that he was induced to enter into the arrangement by a consideration personal to himself and outside of his rights as an officer; that he never informed the sheriff of its real scope or nature, but misled him as to what had been done. Before releasing the property it was his duty to inform the sheriff of the action proposed and to consult him with respect to the matter. When he sent the money derived from the check to the sheriff it was his duty to inform him as to the purpose for which it was sent, and ordinary care and caution would require him to send the stipulation under which it was received or at least a true copy. This stipulation, if it meant what it has so often been held that it meant, would have protected the sheriff in the action against him by Adams, since no recovery could have been had if the check was deposited as absolute security for the claim of the attaching creditors. The deputy ran no risk so long as he held the levy on the goods. When he concluded to enter into an arrangement for the release of that lien it was his duty to see to it that the stipulation was so clear and definite and that it was made known to every one who had an interest in the transaction so that the sheriff should not be exposed to conflicting claims and made liable to damages and loss through the conflicting verdicts of juries.

It is quite true that in this case, as in all the other cases arising out of this transaction, there is a conflict with respect to the facts, and it may well be that some injustice may have been done to the defendants in this respect. Possibly the deputy may have suffered in this case from the disposition made of the facts, as the sheriff suffered in the actions brought against him. But the unanimous affirmance of the judgment

on the report of the referee by the Appellate Division is conclusive upon the question whether the facts found are sustained by the evidence. We are not now permitted to look into the record in order to ascertain whether the referee was right or wrong in his conclusions upon the facts. The Appellate Division has held that all his findings of fact are sustained by the evidence, and this decision concludes us, since upon that question the judgment of the court below cannot be reviewed here.

The facts thus found, and which we are commanded to accept as final, if they do not sustain an action against the deputy for what is technically known as a false return, do create a liability against him and the sureties upon his bond in favor of the sheriff for neglect, omission or breach of duty under the broad language of the conditions. These conditions are fully set forth in the opinion below, and from that it will be seen that the instrument was intended for protection to the sheriff and indemnity against such liability as he has incurred to third parties by reason of the acts and omissions of his deputy, and which have been found in this case. Notwithstanding the complication of facts and circumstances which the case presents, we find, in the end, that the only question of law with which this court can deal is whether the facts found by the referee create any liability against the deputy and his sureties in favor of the sheriff upon the bond.

We think that the loss suffered by the sheriff is directly attributable to the acts and conduct of the deputy, and that the sureties undertook to indemnify the sheriff against the consequences of such acts.

For these reasons the judgment must be affirmed, with costs.

All concur, except GRAY, J., absent.

Judgment affirmed.